933 F.2d 1010
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Richard Joseph NEVELS, Defendant-Appellant.
 No. 90-6149.
 United States Court of Appeals, Sixth Circuit.
 May 21, 1991.
 
 Before KRUPANSKY and BOGGS, Circuit Judges, and WOODS, District Judge.*
 PER CURIAM.
 
 
 1
 On appeal, appellant Nevels challenges the district court's finding that he acted as a leader or organizer in the offense and the district court's failure to reduce his sentence based on his acceptance of responsibility. Nevels was sentenced to 300 months confinement and fined $1,000 after pleading guilty to Conspiracy to Distribute Cocaine Base. Finding Nevels' arguments to be without merit, we affirm the sentence imposed by the district court.
 
 I.
 
 2
 From May until mid-August of 1989, Nevels and
 
 
 3
 co-conspirators, Valerie Grayson and James Landrum, arranged
 
 
 4
 for the transportation of cocaine base from California to
 
 
 5
 Chattanooga, the distribution of the cocaine base in
 
 
 6
 Chattanooga and the transfer of the drug sale proceeds back
 
 
 7
 to California. During this time, appellant Nevels made at
 
 
 8
 least three trips to Chattanooga in furtherance of this
 
 
 9
 conspiracy. During one visit Nevels was observed assisting
 
 
 10
 in the converting of cocaine hydrochloride into cocaine
 
 
 11
 base. On his trips to Chattanooga, Nevels would receive
 
 
 12
 proceeds from the drug sales and return to Los Angeles. He
 
 
 13
 also received drug sale proceeds through Western Union and
 
 
 14
 the U.S. Mail.
 
 
 15
 On or about August 14, 1989, Nevels mailed a package
 
 
 16
 containing 398.3 grams of cocaine base from Los Angeles to
 
 
 17
 Chattanooga. The contents of the package were discovered en
 
 
 18
 route and the discovery eventually led to Nevels' arrest on
 
 
 19
 January 17, 1990. Subsequent searches of Nevels' home and
 
 
 20
 automobile resulted in the seizure of a .45 caliber
 
 
 21
 semi-automatic pistol, a .12 gauge shotgun, a 5.56 mm
 
 
 22
 semi-automatic assault rifle, $2,360 and a 1984 Mercedes.
 
 
 23
 Appellant maintained the pistol and shotgun were placed in
 
 
 24
 his home by two men whom he did not know well and that the
 
 
 25
 semi-automatic rifle found in his truck belonged to a friend.
 
 
 26
 Ms. Grayson described appellant's involvement in the
 
 
 27
 conspiracy as assisting in "cooking" crack at Landrum's
 
 
 28
 girlfriend's apartment, going to Chattanooga with Landrum
 
 
 29
 and encouraging residents of other neighborhoods to come to
 
 
 30
 Landrum for crack. Nevels denies these allegations, stating
 
 
 31
 two of his visits to Chattanooga were purely social and one
 
 
 32
 was for the purpose of buying fireworks.
 
 
 33
 This case was commenced in the Southern Division for the
 
 
 34
 Eastern District of Tennessee as a result of an indictment
 
 
 35
 issued by the Grand Jury. Nevels was fined $1,000 and
 
 
 36
 sentenced to 300 months confinement followed by five years
 
 
 37
 supervised release. He then filed this timely notice of appeal.
 
 
 38
 The first assignment of error on appeal pertains to the
 
 
 39
 district court's decision to accept the presentence report
 
 
 40
 as accurate with regard to the classification of defendant
 
 
 41
 Nevels as a leader or organizer in this offense. The second
 
 
 42
 assignment of error focuses on the court's failure to reduce
 
 
 43
 Nevels' sentence because he did not satisfy the court that
 
 
 44
 he had fully accepted responsibility for his actions.
 
 II.
 
 45
 The district court relied on U.S. Sentencing Guideline 2D1.1 in sentencing appellant. This guideline, which covers Attempts and Conspiracies, requires inclusion of the total amount of drugs known to the government in determining the length of sentence. The amount known in this case was 455 grams which warrants a sentencing level of 34 according to U.S.S.G. Sec. 2D1.1(a)(3) and (c)(5).
 
 
 46
 Guideline 3B then provides for an upward or downward adjustment based on the defendant's role in the offense. U.S.S.G. Sec. 3B1.1(a) provides: "If a defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by four levels." The district court concluded that defendant's offense level was properly increased to level 38.
 
 
 47
 In arriving at this conclusion, the court noted there was almost no dispute as to the fact that there were at least five other people involved. Moreover, the evidence indicated that the defendant was intimately involved in the decisions regarding sales of crack in Chattanooga. Nevels was undisputedly the one who mailed 398.3 grams of cocaine to Chattanooga and Ms. Grayson's testimony states that he received the proceeds of the drug sales. According to Grayson, Nevels was involved in transporting other narcotics to Chattanooga as well. Based on these factors, the district court concluded that defendant was properly classified as a leader or organizer and that the presentence report properly increased his sentencing level accordingly.
 
 
 48
 The standard of review applicable to a district court's finding that a defendant is a leader or organizer is a "question of fact reviewable 'under the clearly erroneous standard, giving due regard to the trial court's assessment of the credibility of witnesses.' " United States v. Barrett, 890 F.2d 855, 867 (6th Cir.1989) (quoting United States v. Barreto, 871 F.2d 511, 512 (5th Cir.1989)). This highly deferential standard of review is a limited one: "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." United States v. Perez, 871 F.2d 45, 48 (6th Cir.1989) (quoting Archer v. Macomb County Bank, 853 F.2d 497, 499 (6th Cir.1988)) (quoting Anderson v. Bessemer City, 470 U.S. 564, 573 (1985)).
 
 
 49
 A district court need not consider every factor listed in U.S.S.G. Sec. 3B1.1 in deciding to adjust an offense level pursuant thereto. These are merely suggestions. Nevels argues the district court failed to properly weigh several factors. One such factor is that all persons involved during the course of the offense are to be considered. In addressing this factor, appellant argues that he was at the same level of control as Grayson and Landrum. The trial evidence clearly shows that appellant's involvement was greater than Grayson's as he was in charge of obtaining the cocaine from contacts, mailing or taking it to her, and receiving the proceeds. Appellant's argument that he was on the same level as Landrum does not help his case either since defendant Landrum was also given a four level upward adjustment which was affirmed by this court on appeal. United States v. Landrum, No. 90-5253 (6th Cir. Sept. 21, 1990). Consideration of this factor clearly bolsters the district court's finding.
 
 
 50
 The second factor upon which Nevels relies in his argument concerns the exercise of decisionmaking authority. The district court found Nevels had control over how much cocaine would be shipped, from what sources, to whom, and when. This suggests that he exercised a great deal of authority over the decisionmaking process. Furthermore, the background commentary to U.S.S.G. Sec. 3B1.1 contains no requirement that defendant be the leader or organizer of all the participants. Since it is clear that appellant had decisionmaking authority over at least some of the participants, the district court's finding is not erroneous.
 
 
 51
 The third factor, the nature of appellant's participation in the offense, also supports the district court's decision. The record indicates Nevels was intimately involved in the decisions regarding the sale of crack cocaine in Chattanooga; he determined whether or not to front the cocaine to Chattanooga purchasers and mailed at least 398.3 grams of cocaine to the area.
 
 
 52
 In turning to the fourth factor argued by Nevels, recruitment of accomplices, Nevels asserts he did not initiate the contact with Grayson. While the evidence supports this contention, Nevels did have to recruit accomplices in order to further the conspiracy. He introduced Grayson to the first person to supply her with cocaine for resale in Chattanooga. After Grayson left Los Angeles, Nevels had to recruit other suppliers and on one occasion even recruited a courier to take drugs to Chattanooga in luggage. Despite appellant's contentions to the contrary, this factor also supports the district court's finding that Nevels was a leader or organizer.
 
 
 53
 As for the fifth factor, the claimed right to a larger share of the fruits of the crime, appellant stated that he got $2,000 or less for each drop off of the proceeds he made. Since the amounts of money which the other participants received are unknown, it cannot be determined whether appellant received a larger share of the proceeds than his co-conspirators. The evidence of record indicates that he must have been receiving a good deal of money from the transactions, as Mr. Stafford, a fellow inmate, testified that appellant had told him that they were "making a killing." Nevels' argument as to this factor fails to persuade this court that the district court's decision was clearly erroneous.
 
 
 54
 As to the sixth factor presented to this court for consideration, that Nevels' role as an organizer was minimal, we again support the trial court's finding. Nevels states that the only organizing or planning he performed was locating the supply of cocaine. However, the record clearly establishes that he was also involved in planning how much to send, where to send it and how to receive the proceeds. No one did this for him after he obtained the cocaine, these decisions were his to make. Nevels' involvement extended to virtually every activity of the conspiracy, even to telling residents of other Chattanooga neighborhoods to go to Landrum for cocaine.
 
 
 55
 The district court considered the seventh factor, the nature and scope of the illegal activity, in deciding whether or not to increase defendant's offense level. The district judge stated that he considered the widespread distribution of crack cocaine to be particularly serious, especially in view of the number of people involved. Based on this factor, the trial judge properly concluded that Nevels was an organizer of a highly dangerous conspiracy.
 
 
 56
 The final factor cited by appellant in support of his position is the degree of control exercised over the other members. Appellant suggests that his role was minimal, that of a mere purchasing agent; however, Nevels controlled the entire supply of cocaine to Chattanooga by determining how much Grayson received, when and where she received it, and how much to charge. He also exercised control over his suppliers by determining with whom to place the orders, for how much and when they would receive the proceeds.
 
 
 57
 In considering the above factors, this court finds every one supports the decision of the district court that appellant was a leader or organizer of a criminal activity involving five or more participants. Accordingly, it cannot be said that the district court's decision is clearly erroneous. As such, the increase in his offense level from 34 to 38 was warranted.
 
 III.
 
 58
 Appellant's second assignment of error is that the district court erred in refusing to decrease appellant's offense level for his acceptance of responsibility.
 
 
 59
 U.S.S.G. Sec. 3E1.1 provides for such a reduction based upon the trial court's consideration of a number of factors. One factor which may be considered is a defendant's voluntary and truthful admission of his involvement in the offense. The district court found that, while defendant did admit his involvement, he was not truthful about his related conduct. In making this finding, the court enumerated the following discrepancies. First, Nevels denied Landrum had any role in the conspiracy despite the fact that the testimony of Ms. Grayson and Mr. Stafford clearly linked Landrum to the conspiracy. Moreover, overwhelming evidence was presented at Landrum's trial as to his involvement. Secondly, the dispute as to the ownership of the seized Mercedes, suggested that defendant was not entirely truthful as to his involvement in the offense. Thus, the court concluded Nevels did not carry the burden of proving that he accepted responsibility within the meaning of guideline Sec. 3E1.1 and was, therefore, not entitled to a two-level reduction in his offense level.
 
 
 60
 Once again, the appropriate standard of review is highly deferential. As note 5 to U.S.S.G. Sec. 3E1.1 states, "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, a determination of the sentencing judge is entitled to great deference on review."
 
 
 61
 Nevels states that, although a guilty plea does not entitle him to a reduction of his sentence as a matter of right, his voluntary plea should be given favorable consideration. However, we find the mere entry of a plea of guilty does not outweigh the misleading and contradictory statements he made after this plea.
 
 
 62
 In Nevels' conversations with his probation officer, he denied a great deal of activity and his denial was directly contradicted by the sworn testimony of Ms. Grayson and Mr. Stafford. Nevels did not accept responsibility for the offense; rather, he consistently tried to minimize his involvement. Since Ms. Grayson's testimony was supported by much of the evidence in the presentence report, the district judge decided it must be given greater weight than appellant's statements. This was a credibility choice clearly within the discretion of the district judge who had the opportunity to view the witnesses while they were testifying.
 
 
 63
 Nevels argues under United States v. Safirstein, 827 F.2d 1380 (9th Cir.1987), a judge may not penalize a defendant for failure to cooperate by implicating other persons or otherwise admitting guilt for crimes with which he is not charged. The instant case is distinguishable from Safirstein, which held that the district judge abused his discretion because the sentence imposed was based only on an inference of involvement in drug trafficking, an inference unsupported by the record or the presentence report. In this case there was an admission of drug trafficking supported by both the record and the presentence report. The judge did not have to infer any misconduct during sentencing. More importantly, the Sixth Circuit, in United States v. Cordell, 924 F.2d 614, 619 (1991), noted that while Sec. 3E1.1 may affect a defendant's decision as to how to exercise his constitutional rights, it is constitutional on its face.
 
 
 64
 Nevels also asserts his Fifth Amendment right against self-incrimination was abridged by the district court. Nevels contends his sentence was not reduced because he refused to implicate others or refused to admit to crimes of which he was innocent. In the instant case, it was not the appellant's refusal to implicate others that was at issue, but the misleading and contradictory statements he made regarding his own involvement. These statements caused the trial judge to conclude Nevels had not accepted responsibility for his actions. Furthermore, Nevels was not asked to admit to crimes which he did not commit, but only to the extent of his involvement in the one to which he pleaded guilty.
 
 
 65
 In order to grant a downward adjustment for acceptance of responsibility, a defendant must "clearly demonstrate a recognition and affirmative acceptance of personal responsibility for his criminal conduct." The district judge concluded that appellant did not carry his burden of proof on this issue and we cannot say that this decision was an abuse of his discretion or that it was unsupported by the record.
 
 
 66
 Accordingly, appellant's sentence is AFFIRMED in all respects.
 
 
 
 *
 The Honorable George E. Woods, United States District Judge for the Eastern District of Michigan, sitting by designation