UNITED STATES of America, Appellee,

v.

**Nathaniel TAYLOR, Appellant.**

UNITED STATES of America, Appellee,

v.

**Paul T. ASHBY, Appellant.**

UNITED STATES of America, Appellee,

v.

**Merle V. WATSON, Jr., Appellant.**

Nos. 90–3124, 90–3136 and 90–3137.

United States Court of Appeals, District of Columbia Circuit.

Argued April 4, 1991.

Decided July 9, 1991.

David B. Smith (appointed by the Court) for appellant, Nathaniel Taylor.

Thomas Lumbard (appointed by the Court) for appellants, Paul T. Ashby and Merle V. Watson, Jr.

Frederick W. Yette, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Russell D. Duncan, Asst. U.S. Attys. were on the brief, for appellee in all cases.

Before D.H. GINSBURG, SENTELLE and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

HENDERSON, Circuit Judge:

On these appeals, we address the challenges three criminal defendants raise to the sentences they received under the U.S. Sentencing Guidelines (Guidelines). United States Sentencing Commission, *Guidelines Manual*, (Nov. 1990). The appellants contend the district court erred in several respects in imposing sentence. First, all three assert that, by denying them a two-point reduction for acceptance of responsibility, the district court misconstrued the relevant section of the Guidelines and violated their fifth amendment right against compelled self-incrimination. Second, one appellant contends that the provision of the Guidelines under which the district court increased his offense level because he possessed a stolen gun impermissibly imposes strict liability. Third, one appellant argues that the district court based an upward departure on improper considerations and erred by failing to give notice of its intent to depart. Finally one appellant asserts that the court erred by departing upward by two levels, rather than one, in his criminal history category. Having carefully reviewed all of these contentions, we find only the final challenge to have merit; we therefore affirm the sentences imposed on two of the appellants and remand for further proceedings as to the remaining appellant.

## I. BACKGROUND

On the evening of February 21, 1990, District of Columbia police stopped a pickup truck carrying four men when they recognized one of the passengers as an escaped felon. The truck contained the three appellants, Nathaniel Taylor, Paul Ashby and Merle Watson, and another man not involved in this proceeding. The police dis-covered all four of the men were carrying loaded firearms [1] and wearing bullet-proof vests under their clothing. Because they were all convicted felons, the four were indicted under 18 U.S.C. § 922(g)(1) which prohibits possession of a firearm by a convicted felon. At their arraignment on April 3, 1990, the three now before us pleaded guilty to the charges against them.

During their presentence interviews with the probation office, the three appellants gave differing accounts of why they were carrying the guns and wearing bullet-proof vests. Watson and Ashby stated that they were interested in purchasing the guns and vests from Taylor and that they were all in the truck on their way to test the guns and vests. Taylor, on the other hand, stated, "it's a jungle out there," and claimed that he was carrying the gun for protection. The presentence reports recommended that, because each defendant had pleaded guilty to the charges against him, each receive a two-level downward adjustment for acceptance of responsibility under section 3E1.1 of the Guidelines. At the sentencing hearing, the district court denied all three defendants the two-level credit. The court termed the defendants' claim that they were going to test the guns and vests an "inherently incredible story," stating that the defendants were "almost making fun of the court by presenting that kind of account." The court further stated:

> I do not believe that they have voluntarily and truthfully admitted to the authorities the full extent of their involvement in the offense that is involved and in all the related conduct which is a prerequisite and that a mere plea of guilty is insufficient.

After the arrest of the three, an investigation revealed that Ashby's firearm was a stolen one. To take account of this fact, his presentence report recommended a two-level increase in the offense level under Guideline section 2K2.1(b)(2). At the sen-

---

1. Ashby had a 9 millimeter (mm.) Taurus pistol in his waistband and an extra full magazine in his pocket. Watson had a 9 mm. Llama pistol also with extra ammunition on his per-son. Taylor possessed an Arminius .38 caliber pistol. The fourth occupant of the truck had a 10 mm. Colt pistol and extra magazines of 10 mm. handgun ammunition in his vest.

tencing hearing, the court acknowledged that "Mr. Ashby cannot be shown to have known that the gun was stolen." The court attached no significance to this fact, however, and imposed the recommended two-level increase.

Both Watson and Ashby had previous convictions that were excluded from consideration in the Guidelines calculation of their criminal histories. To account for these convictions, the presentence reports recommended that the court depart upward in its determination of a criminal history category. At the sentencing hearing, the court adopted this recommendation, raising Ashby's criminal history category from IV to V and raising Watson's from III to V. The court stated, "I am enhancing ... because of the conduct in this particular case and because I feel the criminal records do not adequately and sufficiently reflect the seriousness of the involvement in the criminal process and the conduct of the particular defendants involved." Transcript of Sentencing Hearing, No. 90–0319 at 41 (D.D.C. June 20, 1990).

## II. ACCEPTANCE OF RESPONSIBILITY

■ The district court found that none of the three defendants had "accepted responsibility within the meaning of [section] 3E1.1." That section and its related commentary state in part:

  (a) If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense by 2 levels.

  \*    \*    \*    \*    \*    \*

  (c) A defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right.

### Commentary
### Application Notes
  \*    \*    \*    \*    \*    \*

3. Entry of a plea of guilty prior to the commencement of trial combined with truthful admission of involvement in the offense and related conduct will constitute significant evidence of acceptance of responsibility for the purposes of this section.

  \*    \*    \*    \*    \*    \*

5. The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review.

U.S.S.G. § 3E1.1

The presentence reports for all three defendants, as well as the transcript of the sentencing hearing, indicate that the men admitted committing the offense to which they had pleaded guilty: carrying firearms as convicted felons. The question the district court had was whether they had truthfully accepted responsibility for their "related conduct," that is, for riding around together and wearing bullet-proof vests while carrying loaded firearms. It was on this ground that the district court denied them credit under section 3E1.1:

  [T]he acceptance of responsibility provisions of the Guidelines are very explicit, that simply an admission of guilt is not sufficient.... [O]ne of the requirements is that there be a voluntary and *truthful* admission of the *related conduct.*

  Now, the admission that these men have made is that at six o'clock at night in February the four of them were [riding] around [in] the car with loaded guns and bulletproof vests with the idea of going out and testing the vests.... [T]hat's an *inherently incredible story.* There isn't any rational person that I can conceive of who would accept that as a *truthful* story.

(Emphasis added.) The court further stated:

  It seems to me it's just a *totally incredible story* and it seems to me almost making fun of the court by presenting that kind of an account, and that is not accepting responsibility. That's a wise guy answer and that's all it is.

Now, if those gentlemen wish to accept responsibility they have an obligation to give *all related circumstances.*

(Emphasis added.)

Ashby, Watson and Taylor attack the district court's refusal to grant them credit for acceptance of responsibility. They assert that the court's denial of section 3E1.1 credit arose from a misconstruction of the Guidelines and violated their fifth amendment right because it attempted to coerce explanations of their "related conduct" that would incriminate them for offenses with which they had not yet been charged. Under the appellants' argument, an explanation of their "related conduct" other than the one they gave would amount to self-incrimination and the district court therefore acted unconstitutionally by demanding one.

We take as the starting point for our analysis the deference appellate courts are to accord district court determinations under section 3E1.1. The commentary to this section stresses the district court's "unique position to evaluate a defendant's acceptance of responsibility," as a result of which the sentencing judge's determinations are "entitled to *great* deference on review." U.S.S.G. § 3E1.1, comment. (n. 5) (emphasis added). With the defendant before him, the sentencing judge is unquestionably in a better position to assess contrition and candor than is an appellate court. Courts have held that these determinations are entitled, at the least, to the benefit of the clearly erroneous standard of review. *See United States v. Watt,* 910 F.2d 587, 589 (9th Cir. 1990); *United States v. Gordon,* 895 F.2d 932, 937 (4th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 131, 112 L.Ed.2d 98 (1990); *United States v. Moskowitz,* 883 F.2d 1142, 1155 (2d Cir.1989); *cf. United States v. Tellez,* 882 F.2d 141, 143 (5th Cir.1989) (determinations under section 3E1.1 are "entitled to great deference, greater than that accorded under the clearly erroneous standard").

■ The scope of the district court's wide discretion under section 3E1.1 is not restricted to an evaluation of the defendant's acceptance of responsibility for the narrow offense of conviction and its essential elements. The application notes to section 3E1.1 explicitly identify "truthful admission of involvement in ... related conduct" as significant evidence bearing upon the trial judge's determination. In that connection, the district court insisted that the defendants credibly explain all of the circumstances surrounding their possession of the loaded firearms, including the bullet-proof vests. The defendants' explanation—that they were on their way to test the guns and vests—understandably did not satisfy the court.[2] We are unprepared to hold that the court clearly erred in terming the defendants' story "inherently incredible."

■ We are similarly unprepared to hold that the court erred in construing the guideline's reference to "related conduct" as requiring an admission of conduct beyond the mere possession of the firearms. In construing this section, other courts have held that it requires a defendant to "accept responsibility for all facets of the crime to which he ... pled guilty," *United States v. Oliveras,* 905 F.2d 623, 629 (2d Cir.1990) (per curiam); to "disclose ... any significant fact relevant to" the crime to which he pleaded, *Tellez,* 882 F.2d at 143; and to "freely and affirmatively acknowledge[ ] his responsibility for the full range of activities that he ... engaged in." *U.S. v. Moskowitz,* 888 F.2d 223, 226 (2d Cir. 1989). The district court properly interpreted the guideline to require a truthful and complete explanation of, and a genuine acceptance of responsibility for, all of the circumstances surrounding the defendants' firearm possession offense. It was not error for the district court to require an

---

**2.** Taylor's explanation for his conduct differed somewhat from that of his two co-defendants. He said he was carrying the gun and wearing the bullet-proof vest for protection, claiming, "it's a jungle out there." It is not clear, however, that, at the sentencing hearing, Taylor dis-associated himself from the version of events offered by Watson and Ashby. In any event, the district court committed no clear error in rejecting Taylor's different but, in its view, equally inadequate explanation for his conduct.

acceptance of responsibility that extended beyond the narrow elements of the offense.

Nevertheless, the appellants argue that their case falls under the rule announced in *United States v. Oliveras*, 905 F.2d 623 (2d Cir.1990), and *United States v. Perez–Franco*, 873 F.2d 455 (1st Cir.1989). In those decisions, the courts held that conditioning section 3E1.1 credit on a defendant's admitting to charges the government has agreed to drop as part of a plea bargain violates the fifth amendment. Here, the district court did not require the defendants to admit to counts other than those to which they had pleaded; it required only a credible and complete explanation, evincing remorse or contrition, for the conduct surrounding the defendants' offense of conviction.[3]

The appellants contend, however, that the district court's ruling nonetheless violates the Constitution because the district court in effect required an explanation of the surrounding circumstances that would have meant admitting to further crimes.[4] This version of the appellants' situation gains some support from statements volunteered by the district judge during the sentencing hearing. He stated that the defendants "were either coming from or going to or looking for trouble" and were "either returning from or headed toward an offensive operation of some kind." Notwithstanding these statements, we are unwilling to hold that the appellants could have offered no explanation for their conduct that would have satisfied section 3E1.1 without admitting to other crimes.

The district judge made a credibility determination that was not clearly erroneous. We therefore need not reach the fifth amendment issue. Should some future appellant demonstrate sincerity and remorse while at the same time he declines to expound upon other criminal conduct because of a concern with self-incrimination, then perhaps the issue will be squarely presented. This is not such a case, however, and the district court's finding of insincerity and lack of remorse are sufficient grounds for denying the two-point reduction.

### III. INCREASE TO ACCOUNT FOR STOLEN GUN

■ The special offense characteristic to Guideline section 2K2.1, Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition, directs the district court to increase the offense level by two levels "[i]f the firearm was stolen or had an altered or obliterated serial number." U.S. S.G. § 2K2.1(b)(2). Appellant Ashby contests the district court's increase of his offense level under this section in the absence of evidence showing he was aware the gun had been stolen. He contends that imposition of strict liability in connection with this portion of his offense not only violates the presumption against strict liability but also the rule of lenity under the fifth amendment's due process clause.

■ Under the rule of lenity, "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity," *United States v. Bass*, 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971); and the presumption against strict liability states that "absent evidence of a contrary legislative intent, courts should presume *mens rea* is required." *United States v. Nofziger*, 878 F.2d 442, 452 (D.C.Cir.) *cert. denied*, — U.S. —, 110 S.Ct. 564, 107 L.Ed.2d 559 (1989); *see also United States v. Burke*, 888 F.2d 862, 866 (D.C.Cir.1989) ("Measures that impose criminal punish-

---

**3.** *Cf. United States v. Piper*, 918 F.2d 839, 841 (9th Cir.1990) (per curiam) (upholding denial of acceptance of responsibility credit when defendant was not candid about criminal conduct occurring after offense of conviction because "a district court [may] consider evidence of continued criminal activity, about which [the defendant] dissembled, to belie her acceptance of responsibility *for the offense of conviction*") (original emphasis; internal quotations omitted). Although the related conduct considered in *Piper* was criminal in nature and that is not the case here, *Piper* supports a sentencing judge's consideration of *any* related conduct, whether criminal or not, in assessing the defendant's truthfulness and contrition about the offense of conviction.

**4.** Although all three appellants make this argument here, only Taylor raised it before the district court. *See* Transcript of Sentencing Hearing at 17–18.

ment without a showing of mens rea occupy a generally disfavored status") (internal quotations omitted). Ashby's attempt to invoke these principles founders on the threshold requirement that the rule in question be ambiguous. *See, e.g., Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980) ("the touchstone of the rule of lenity is statutory ambiguity") (internal quotations omitted); *Nofziger,* 878 F.2d at 452. Here, we hold the Guidelines unambiguously require the two-level increase under section 2K2.1 regardless of a defendant's knowledge that the firearm he possessed was stolen.

Section 1B1.3(a)(4) of an earlier version of the Guidelines provided that "[u]nless otherwise specified ... specific offense characteristics ... shall be determined on the basis of ... the defendant's state of mind, intent, motive and purpose in committing the offense." Since then, however, section 1B1.3 has undergone a significant change. As in effect when Ashby was sentenced, section 1B1.3(a)(4) omits the original language and merely directs the district court to consider the "information specified in the applicable guideline." U.S.S.G. § 1B1.3(a)(4).

The guideline that imposes a two-level increase for possession of a stolen gun contains no express requirement that the defendant *knew* the gun had been stolen. In light of the recent amendment deleting the blanket requirement that a sentencing court consider the defendant's state of mind, we are persuaded that Guidelines section 2K2.1 requires no finding of scienter before the two-level increase for possession of a stolen gun applies.[5] *See United States v. Lam Kwong–Wah,* 924 F.2d 298, 304 (D.C.Cir.1991) ("under the amended Guidelines, scienter is not required as a general matter"); *Burke,* 888 F.2d at 866 (courts will not imply scienter requirement into statute lacking it when "a reason to

impose strict liability appear[s] in the *legislative history* or in the structure of the contested legal norm") (emphasis added). Furthermore, the Guidelines explicitly impose a scienter requirement in connection with other specific offense characteristics. *See* U.S.S.G. § 2K1.3(b)(2) (imposing six-level increase when "offense involved explosives that the defendant *knew or had reason to believe* were stolen") (emphasis added). When they intended to do so, the drafters were clear in imposing a scienter requirement. We interpret the absence of such a requirement from section 2K2.1 as an unambiguous indication of intent to impose strict liability with respect to the specific offense characteristic of possession of a stolen firearm.

Because section 2K2.1 is unambiguous in its imposition of strict liability for possession of a stolen firearm, the presumption against strict liability does not apply. For the same reason, we need not reach appellant Ashby's constitutional argument regarding the rule of lenity. The district court did not err in increasing Ashby's offense level under this section and we therefore affirm that portion of its ruling. *Accord United States v. Peoples,* 904 F.2d 23, 25 (9th Cir.1990) (per curiam); *United States v. Anderson,* 886 F.2d 215 (8th Cir. 1989) (per curiam).

### IV. ENHANCEMENT OF WATSON'S AND ASHBY'S CRIMINAL HISTORY CATEGORIES

At the sentencing hearing, the district court enhanced Watson's and Ashby's criminal history categories under the Guidelines. The presentence report recommended an upward departure in their criminal history calculations to account for earlier convictions that the Guidelines excluded from computation. During the hearing, the court stated its intention to impose an upward departure and offered the defen-

---

**5.** Indeed, this conclusion was presaged by dictum in *Burke,* 888 F.2d at 867 n. 7, where we construed an Eighth Circuit decision, *United States v. Williams,* 879 F.2d 454, 457 (8th Cir. 1989), to hold that an identical specific offense characteristic under Guidelines section 2K2.2

authorized an increase in the sentence of a defendant convicted of possessing an unregistered firearm "when the Government shows that the weapon was stolen, regardless of whether the defendant was aware of the firearm's illicit origin."

dants and their counsel the opportunity to respond. Then the court stated:

> I am enhancing ... because of the conduct in this particular case and because I feel the criminal records do not adequately and sufficiently reflect the seriousness of the involvement in the criminal process and the conduct of the particular defendants involved.
>
> I view these sentences as punishment sentences relating to individuals without remorse whose conduct over the years has been given to violence.

Transcript of Sentencing Hearing at 41.

### A. Ashby: Notice of Intent to Depart and Consideration of "Conduct in This Particular Case"

Ashby raises two arguments regarding the court's enhancement of his criminal history category. He complains that he lacked adequate notice of the court's intention to depart upward and he asserts that the court erred in basing its upward departure on "the conduct in this particular case."

■ With respect to the first argument, we hold that Ashby had adequate notice of the possibility the court would depart upward from the recommended sentence. The presentence report recommended a departure and the district court gave the defendant the opportunity to address the grounds for the proposed upward departure at the sentencing hearing; Ashby therefore received sufficient notice. *See United States v. Burns,* —— U.S. ——, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991).

■ We also find to be without merit Ashby's contention that the district court erred in considering as a basis for the upward departure his "conduct in this particular case." The Guidelines state, "[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or *the likelihood*

*that the defendant will commit other crimes,* the court may consider imposing a sentence departing from the otherwise applicable guideline range." U.S.S.G. § 4A1.3 (emphasis added). Ashby's presentence report reveals that he had twice before been convicted of illegally carrying a gun. The nature of present conduct is relevant both in order to give context to the past behavior in question and in order to assess a tendency toward recidivism. The statement of the district court therefore evinces no error in looking to the conduct in this case.

### B. Watson: Unexplained Upward Departure of Two Levels in Criminal History Calculation

■ At the sentencing hearing, the district court departed upward by two levels in calculating Watson's criminal history category. Watson's original presentence report recommended a category IV criminal history. In response to Watson's objections to the report, the probation office amended it to recommend placing Watson in category III. The court assigned Watson to a criminal history category of V. Before departing upward by two levels in Watson's criminal history calculation, the district court should have first explained why a departure of one level would be inadequate, *United States v. Allen,* 898 F.2d 203, 204–05 (D.C.Cir.1990) (per curiam); *see also United States v. Lopez,* 871 F.2d 513, 515 (5th Cir.1989); *United States v. Cervantes,* 878 F.2d 50, 54 (2d Cir.1989), but it did not do so and we therefore remand. We note that the district court's two-level departure may have been inadvertent. The court may have believed Watson remained in category IV and that, by placing him in category V, it was departing upward only by one level. If this is true, on remand the district court need only resentence Watson under category IV to accomplish a one-step departure.[6]

---

**6.** In his brief, Watson also claims that the district court afforded him inadequate notice before departing upward in his criminal history category and that the court erred in considering his "conduct in this case" as a ground for depar-

ture. Because we remand him for resentencing, we need not consider his notice arguments. For the reasons given in rejecting Ashby's similar argument, the court did not err in considering conduct related to Watson's offense of con-

### V. Conclusion

Based on their explanations of their conduct, the district court found that the defendants had not sincerely expressed contrition for their actions; accordingly, it properly denied them credit for acceptance of responsibility under Guidelines section 3E1.1. The court also correctly applied section 2K2.1 in holding that it includes no scienter requirement. We further hold that the district court did not err in treating defendant Ashby's conduct in this case as a basis for an upward departure in his criminal history category; nor did the court provide Ashby with inadequate notice of its intent to depart. The only point on which we hold the district court erred is its unexplained, two-level departure in Watson's criminal history category. "Here, we express no view as to the ultimate propriety of the [two level departure.] We remand only to ensure that the appropriate methodology is followed under the Guidelines." *Lopez*, 871 F.2d at 515. For this limited purpose only, we remand Watson for resentencing. In all other respects, we affirm the rulings of the district court.

*So ordered.*

viction as a ground for departure. *See supra* at 683.